IN THE UNITED STATES DISTRICT COURT
    FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| CHAKA FATTAH, SR., et al. | : | NO. 15-346 |

MEMORANDUM

Bartle, J.                                                                                                                                                                      May 11, 2016

        The Court in this criminal action has before it three related motions: (1) the motion in limine of the Government to restrict the scope of cross-examination of a cooperating witness ("CW") regarding his mental health history; and (2) two motions, one by the CW and the other by the Government, to quash a subpoena duces tecum for the CW's mental health records served on April 7, 2016 by the defendant Robert Brand ("Brand").[1]

                                          I.

        Brand is charged along with Chaka Fattah, Sr. ("Fattah"), Herbert Vederman, Karen Nicholas, and Bonnie Bowser in a multi-count indictment. Fattah is a member of Congress from the Second Congressional District of Pennsylvania. All five defendants are charged in Count One of the indictment with conspiracy to commit racketeering in violation of 18 U.S.C. § 1962(d). In addition, Brand is charged in Count Two with

---

1. The Government's motion also seeks to join the CW's motion to quash.

conspiracy to commit wire fraud under 18 U.S.C. §§ 1343 and 1349.

The CW, who is the subject of the pending motions, is expected to provide key testimony for the prosecution concerning several schemes alleged in the indictment.  According to the Government, the events in question involving the CW occurred principally in 2007 and 2008 and then from February 2009 into April 2010.  As a result of discovery produced by the Government, the defendants have learned that the CW has bipolar II disorder and takes medication for it.  The defendants want to be able to impeach him with respect to his mental health history and to obtain his mental health records in aid of impeachment.

II.

The CW and the Government seek to quash the subpoena for the CW's mental health records on the ground that they are protected from disclosure by the psychotherapist-patient privilege.[2]  They rely on Jaffee v. Redmond, 518 U.S. 1 (1996).

In Jaffee, the Supreme Court recognized such a privilege in a federal civil action.  There plaintiff brought a civil rights suit for excessive force against a police officer

---

2. Rule 17(c)(1) of the Federal Rules of Criminal Procedure permits the issuance of a subpoena to a witness to produce documents.  Rule 17(c)(2) allows the court to quash the subpoena "if compliance would be unreasonable or oppressive."

who had shot and killed plaintiff's decedent.  Plaintiff sought to obtain for use in cross-examining the defendant the notes of the fifty counselling sessions the defendant had with a licensed clinical social worker.  The Court of Appeals, applying a balancing test, held that the notes were privileged.  The Supreme Court affirmed, although applying a somewhat different analysis.

The Court described the question before it to be "whether a privilege protecting confidential communications between a psychotherapist and her patient promotes sufficiently important interests to outweigh the need for probative evidence."  Id. at 9-10.  The Court answered in the affirmative.  It emphasized the importance of confidence and trust in that setting, which would be undermined without a robust privilege to protect communications from disclosure.  It held "that confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence."  Id. at 15.  The Court then extended the privilege to confidential communications to licensed social workers "in the course of psychotherapy."  Id. at 16.

The Court rejected any balancing test on the ground of unpredictability.  It stated, "an uncertain privilege, or one which purports to be certain but results in widely varying

applications by the courts, is little better than no privilege at all." Id. at 18.  Despite the definitive statement that a balancing test does not apply, it left the door somewhat ajar by observing that "[b]ecause this is the first case in which we have recognized a psychotherapist privilege, it is neither necessary nor feasible to delineate its full contours in a way that 'would govern all conceivable future questions in this area.'" Id. (quoting Upjohn Co. v. United States, 449 U.S. 383, 386 (1981)).  It then dropped the following footnote: "Although it would be premature to speculate about most future developments in the federal psychotherapist privilege, we do not doubt that there are situations in which the privilege must give way, for example, if a serious threat of harm to the patient or to others can be averted only by means of a disclosure by the therapist."  Id. at 18 n.19.

      The defense argues that any privilege is not absolute in a criminal case.  In its view, Jaffee applies only to civil cases, where the privilege does not present Confrontation Clause or Due Process concerns.  The parties have not cited and we have found no reported decision from our Court of Appeals or from any district court in this circuit that has applied or discussed Jaffee in a criminal action.

      The defense cites the Supreme Court's decision in Pennsylvania v. Ritchie, 480 U.S. 39 (1987).  There the Court

dealt with the confidentiality of the medical records of a witness in a criminal case.  A father had been charged with sexual crimes against his thirteen-year-old daughter in the Court of Common Pleas of Allegheny County, Pennsylvania.  The father subpoenaed the records of his daughter from Children and Youth Services ("CYS"), a state protective service agency.  The relevant state statute required such records to remain confidential with certain limited exceptions, one of which allowed production by a court order.  The Pennsylvania Supreme Court held that the father's lawyer was entitled to review the entire file on the ground that failure to allow review violated the father's Sixth Amendment's right to compulsory process.

The United States Supreme Court analyzed the issue under Due Process and not under the Compulsory Process Clause or the Confrontation Clause.  It held that Due Process required the trial court to review the CYS file in camera to determine whether the contents, if disclosed, would be material, that is, whether "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome."  Id. at 57 (quoting United States v. Bagley, 473 U.S. 667, 682 (1985)).

The Court made it clear that the defense did not have the independent right to examine the file to decide for itself whether the information is relevant or material.  The Court is to review the records in camera and make a determination as to whether there is a reasonable probability that disclosure would change the outcome.  Id. at 61.

We do not think that the Supreme Court, in a criminal action, would always bar a trial court from disclosing the mental health records of a witness based on a psychotherapist-patient privilege.  The Supreme Court allowed disclosure in Ritchie which the Court did not overrule or even cite in Jaffee.  Moreover, Jaffee, a civil case, was careful not to rule out exceptions to the broad-based psychiatrist-patient privilege.

The need for some exceptions to this evidentiary privilege is compelling in the criminal context.  For example, if a prosecution witness had a history of psychosis or hallucinations or certain forms of dementia that affected his or her veracity or recall, a defendant in our view would clearly have a Due Process right to obtain the relevant mental health records.  See United States v. Robinson, 583 F.3d 1265, 1275 (10th Cir. 2009); United States v. Butt, 955 F.2d 77, 82-83 (1st Cir. 1996).  The interests protected by any

psychotherapist-patient privilege would not outweigh the need for probative evidence in those instances.  See Jaffee, 518 U.S. at 15.

In light of Ritchie and a careful reading of Jaffee, we conclude that we must analyze under the rubric of Due Process the subpoena for the mental health records of the CW.  The court must first review those records in camera and make a determination if anything contained therein is material, that is gives rise to a reasonable probability that it will affect the outcome of the case.  See Ritchie, 480 U.S. at 60.  If there is such a reasonable probability, the court will order disclosure.  Otherwise, the records will remain confidential.  The court will serve as the guardian of the gate to prevent fishing expeditions and to prohibit improper invasions of a witness' or party's privacy interests.  See Fed. R. Crim. P. 17(c)(2).

Here, the CW has produced voluntarily for the court's in camera inspection the mental health records kept by his present and former psychiatrists as well as a letter from his current psychiatrist concerning his bipolar disorder.  Brand has submitted to the court a letter from a licensed psychologist concerning "the behavioral manifestation that might be expected in an individual with an undiagnosed and untreated bipolar II disorder."

As noted above, the relevant events about which the CW is expected to testify happened in 2007 and 2008 and then from February 2009 into April 2010. The mental health records of the CW cover the period from December 16, 2009 through March 29, 2016. The overlap between the events in question and the mental health records is only about four months.

Having made the required in camera review, we find nothing in the mental health records of the CW that is material for this criminal action. The records reveal nothing that calls into question his memory, perception, competence, or veracity with respect to the events or times in question. Thus, they contain no information which, if disclosed, might change the outcome of the trial. We reject the defense's argument here that it has a right to see the CW's mental health records independently of the court's review. See Ritchie, 480 U.S. at 61.

The letter about bipolar disorder submitted by Brand from a licensed psychologist does not alter the result. She, of course, has not examined the CW or his mental health records. Significantly, her comments are general in nature. For example, she states that "affective manifestations [of bipolar disorder] may include grandiosity . . . cognitive changes may include deficits in memory . . . and problems in processing information. Individuals may be distracted, disoriented or even delusional,

-8-

have poor reality testing and be unable to distinguish relevant from irrelevant information." (Emphasis added.) She also notes that "researchers [in a 2004 study] suggested that complex memory processes are impaired during active bipolar states and during remission." (Emphasis added.) In one case cited by the psychologist, a professor who has bipolar disorder observed that in her case "manic-depression . . . destroys the basis for rational thought and that overwhelming confusion replaces clarity." The psychologist does not say that this experience is the norm for all others with a bipolar disorder.

There are a number of problems with the letter. First, the psychologist, who has never examined the CW, does not apply her comments specifically to him. She never opines that he ever suffered from memory loss or any misunderstanding of events in issue. Recitation of the experience of one individual with bipolar disorder is not probative. The letter simply focuses on what may or can occur when one has a bipolar disorder. This is not enough.

Further, as noted above, the psychologist begins her letter by saying that the question she has been asked to address is a "description of bipolar disorder with a particular focus in the behavioral manifestations that might be expected with an individual with an undiagnosed and untreated bipolar II disorder." (Emphasis added.) The discovery produced by the

-9-

Government shows only that the CW was diagnosed with a bipolar disorder during a small fraction of the time during which the schemes in question occurred. Exactly when his illness first manifested itself is not stated. Some discovery indicates that at the earliest he was diagnosed as bipolar in early 2010, near the conclusion of the events in question. Other discovery indicates that he was first diagnosed in mid-2010 after the events had concluded. The discovery also shows that he is now taking medication and thus undergoing treatment. The psychologist engaged by Brand never discusses the manifestations or effects of bipolar disorder when a patient is on medication or how the medication affects his perception or memory of prior events. In sum, her letter is not helpful insofar as it seeks to inform the court as to the ability of the CW, at the trial, to recall or truthfully recount relevant facts.

Due Process does not mandate that the mental health records of the CW be produced. Accordingly, the motion of the CW and the motion of the Government to quash the subpoena duces tecum for the CW's mental health records will be granted.

IV.

We now turn to the motion in limine of the Government to restrict the defense from cross-examining the CW concerning his bipolar disorder. The defense responds that any restriction would violate its right under the Confrontation Clause of the

Sixth Amendment of the Constitution which guarantees that "in all criminal prosecutions the accused shall enjoy the right to be confronted with the witnesses against him . . . ." U.S. Const. Amend. VI; see also Delaware v. Fensterer, 474 U.S. 15, 18-19 (1985); Davis v. Alaska, 415 U.S. 308, 316 (1974). The right of confrontation exists not only to allow a defendant to "gaze upon" a witness but more significantly to afford the all-important opportunity for effective cross-examination. Davis, 415 U.S. 315-16.  This, of course, includes the opportunity to impeach a witness.  Id.

       The Confrontation Clause does not give counsel carte blanche in the interrogation of a witness.  The court may always prevent examination concerning any matter that is not relevant either to the merits or to impeachment. Fed. R. Evid. 401.  The court may also "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues [or] misleading the jury . . . ." Fed. R. Evid. 403.

       The Government cites cases for the proposition that bipolar disorder does not affect memory, capacity, or credibility.  See United States v. Baxter, 761 F.3d 17, 24 (D.C. Cir. 2014); United States v. George, 532 F.3d 933, 938 (D.C. Cir. 2008).  It urges the court to proceed no further before granting its motion in limine to prevent

-11-

cross-examination of the CW on his illness.  The Government paints with too broad a brush.  These cases do not go as far as the Government contends and indeed support a case-by-case assessment.  With the variety of individual circumstances and conditions and the ever-changing medical understanding of various illnesses, we reject a categorical approach.  Instead, we will follow <u>Baxter</u> and <u>George</u> and focus on the specific mental health history of the CW.

   That being said, the problem for the defense is that it has not made a showing that the CW's bipolar disorder is probative for impeachment purposes.  Although the defense points to various discovery produced by the Government, all of it involves comments by lay persons.  As far as is known, none of them is a physician or psychologist.  The persons on whose comments the defense relies simply cannot tie any memory lapses to his bipolar disorder.  It is not uncommon for individuals without bipolar or other mental disorders to have faded memories or misremember or even misperceive.  Nor is there indication that any behavior issues related to his bipolar disorder are relevant to attack his credibility.

   Moreover, as noted above, the licensed psychologist engaged by Brand has not examined the CW or his mental health records.  Her letter, while expounding on bipolar disorder in general, does not opine that the CW's bipolar disorder at any

time affected his memory, competence, or veracity or as to what effect his medications may have.  The defense references the <u>Diagnostic and Statistical Manual of Mental Disorders</u> 123-154 (5th ed., Am. Psych. Ass'n 2013).  That resource clearly explains that bipolar disorders come in various forms and levels of severity.  One size does not fit all.  Finally, the CW's mental health records, which the court has reviewed, do not help the defense.  The records are devoid of anything which is germane for impeachment purposes.  In sum, the defense has not demonstrated that its right to cross-examination will be "effectively emasculate[d]" if the Government's motion in limine is granted.  <u>Fensterer</u>, 474 U.S. at 19 (quoting <u>Smith v. Illinois</u>, 390 U.S. 129, 131 (1968)).

   Whatever the circumstances may be with other persons suffering from a bipolar disorder, there is no basis to infer that it has affected the CW's memory, competence, or ability or tendency to tell the truth in connection with the facts in this case.  As the court observed in <u>George</u>, a case involving bipolar disorder, "[m]ental illness is not a generic badge of incompetence or dishonesty."  532 F.3d at 937.

   Any mention of the CW's bipolar disorder at trial could only be designed to confuse the jury or to stigmatize him unfairly because of a "mental problem" without any countervailing probative value.  <u>See</u> Fed. R. Evid. 403.  While

surely he may be fully cross-examined about his memory, competence, or truthfulness like any other witness, no reference may be made to his bipolar disorder or the medications he takes to manage it.[3]

The court will grant the motion in limine of the Government to restrict the defense from cross-examining the CW about his bipolar disorder.

---

3. The defense also appears to be arguing that the mental health records of the CW and cross-examination of the CW on his bipolar disorder will somehow be relevant to the merits of the case. Defendants never explain how that would be so. We find their argument to be without merit.