## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | : CRIMINAL NO. 15-346-01 |
| | : |
| CHAKA FATTAH, SR. | : |
| | : |
| | : |

## DEFENDANT CHAKA FATTAH, SR.'S
## SUPPLEMENTAL SENTENCING MEMORANDUM

Samuel W. Silver
Bruce P. Merenstein
SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, PA 19103
215-751-2000
215-751-2205 (facsimile)

*Attorneys for Chaka Fattah, Sr.*

July 9, 2019

Defendant Chaka Fattah, Sr., submits the following Supplemental Sentencing Memorandum. Mr. Fattah hereby incorporates by reference his original Sentencing Memorandum, filed on December 7, 2016 (Dkt. 567).

## I.     Introduction

On January 16, 2019, the Third Circuit issued an opinion vacating Mr. Fattah's convictions on Count 16 (conspiracy to commit bribery); Count 17 (bribery); Count 22 (money laundering); and Count 23 (conspiracy to commit money laundering) of the Indictment, and reinstating Mr. Fattah's convictions on Count 19 (bank fraud) and Count 20 (false statements to a financial institution). *United States v. Chaka Fattah, Sr.*, 914 F.3d 112 (3d Cir. 2019). In light of the Third Circuit's opinion vacating certain counts (and reinstating others), it is necessary to engage in a renewed analysis of the applicable Sentencing Guidelines and the factors in 18 U.S.C. § 3553(a) before resentencing Mr. Fattah. While the new, lower Guidelines range of 151-188 months is higher than the original 120-month sentence imposed by the Court more than two and a half years ago, a sentence of less than 120 months is warranted, in light of the substantially reduced starting point of the Guidelines range and consideration of the factors in Section 3553(a), particularly Mr. Fattah's post-sentencing conduct and sentences imposed on similarly situated individuals. More specifically, as discussed below:

a) The vacating of four counts (and reinstatement of two counts) results in a significant change in the Guidelines range, the starting point for any sentence;

b) Mr. Fattah has demonstrated exemplary post-sentencing conduct; and

    c) A review of similarly situated individuals demonstrates that a sentence significantly below the guidelines is appropriate in this case.[1]

## II. The Substantial Reduction of 37-47 Months in the Guidelines Range Warrants a Significant Reduction in Mr. Fattah's Original Sentence.

The federal Sentencing Guidelines, while advisory, remain an indispensable part of the sentencing process and the starting point for determination of any sentence. *See Gall v. United States*, 552 U.S. 38, 49 (2007). For Mr. Fattah's original sentencing, the Guidelines range was 188 to 235 months, based on a total offense level of 36 and a criminal history category of I, for the 18 counts of conviction. *See* N.T. 12/12/16 at 54. After consideration of the factors in 18 U.S.C. § 3553(a), the Court imposed a sentence of 120 months, a variance of 68 to 115 months from the Guidelines range. *Id.* at 55-59.

With the vacating of the four counts (and reinstatement of two counts), Mr. Fattah's new Guidelines range is **151 to 188 months**, or 37 to 47 months below the original Guidelines range that resulted in a 120-month sentence. A similar variance from the new, lower Guidelines range, would result in a sentence of approximately **83 months**. No factors exist that would warrant a lesser variance (or no variance) from the one the Court found warranted at the original sentencing two and a half years ago. Rather, as discussed below, the opposite is true, as the only significant change in any of the relevant sentencing factors is Mr. Fattah's exemplary conduct in prison over the past two and a half years. *See Pepper v. United States*, 562 U.S. 476, 481 (2011) ("a district court at resentencing may consider evidence of the defendant's postsentencing rehabilitation").

---

[1] The additional cases discussed below supplement the examples of similarly situated individuals previously discussed in Mr. Fattah's original Sentencing Memorandum.

As a result of the Third Circuit's mandate, the Court is required to consider each of the remaining counts, including those for which Mr. Fattah was previously sentenced, in fashioning an appropriate sentence. First, where a court imposes a sentence on interdependent counts and one or more of those counts is later vacated, the entire original sentence is called into question and must be revisited upon resentencing. *See United States v. Miller*, 594 F.3d 172, 180 (3d Cir. 2010). The government charged and tried this case as an overarching RICO conspiracy, led by Mr. Fattah, and involving related schemes (four of which Mr. Fattah was charged with leading). Notably, the government continued to press this theory of the case at Mr. Fattah's original sentencing, arguing that Mr. Fattah's crimes "were neither isolated nor the product of a single criminal choice. In sum, Fattah and his associates engaged in a pattern of fraudulent and corrupt conduct over the course of Fattah's congressional career, including misappropriation of hundreds of thousands of dollars of federal funds, bribery, and fraud. . . . Congressman Fattah was the de facto leader of a criminal racketeering enterprise and that enterprise consisted of current and former Fattah congressional staffers and their family members, political operatives, and supporters." Gov't Sentencing Memo. 18 (Dec. 5, 2016).

Second, the Third Circuit vacated four counts at the core of the government's overarching conspiracy case, those involving the alleged bribery scheme between Mr. Fattah and Herb Vederman. At trial, the government highlighted this alleged scheme as the heart of the overarching RICO conspiracy and emblematic of Mr. Fattah's alleged criminal conduct: "the Vederman bribery scheme, this one takes the cake. . . . And that bribery scheme just replicated the same pattern you saw over and over again in all of the schemes." N.T. 6/13/16 (am) at 99-100, 131-132. In the original PSR for Mr. Fattah's 2016 sentencing, the now-vacated bribery and money laundering charges drove the total offense level and ultimate Guidelines range. *See*

PSR ¶¶ 165-178, 207-208 (Dec. 1, 2016).  The reinstated counts, on the other hand, have no effect on the new total offense level and Guidelines range.  *Compare id.* ¶¶ 150-164, 207-210, *with* PSR ¶¶ 138-153, 192-195 (July 3, 2019).  Thus, the vacating of the four counts should be reflected in Mr. Fattah's new sentence; he should not be resentenced solely on the two reinstated counts.  *Cf. United States v. Ciavarella*, 716 F.3d 705, 735 (3d Cir. 2013) ("because the vacated count did not affect Ciavarella's total offense level, Guideline range, or sentence, we hold that resentencing *de novo* is not required").

### III. Mr. Fattah's Post-Sentencing Conduct, Demonstrated by his Exemplary Prison Record, Warrants Consideration in Fashioning an Appropriate Sentence.

In addition to his lower offense level, Mr. Fattah now comes before this Court as an inmate of more than 900 days, and thus as someone whose conduct has been monitored and recorded for more than two years.  This conduct is relevant and should be considered by the Court.  The Supreme Court has held that a district court may consider evidence of an individual's post-sentencing rehabilitation at a resentencing hearing, and that such evidence may, in appropriate cases, support a downward variance.  *Pepper v. United States*, 562 U.S. 476, 490-91 (2011); *see also United States v. Diaz*, 639 F.3d 616, 621-23 (2011).  In *Pepper*, the Supreme Court recognized that evidence of a defendant's post-sentencing rehabilitation constitutes a "critical part" of his history and characteristics, and is "clearly relevant to the selection of an appropriate sentence." *Pepper*, 562 U.S. at 491-92.  The Court explained that post-sentencing conduct may be the most accurate indicator of a person's "present purposes and tendencies" as well as the likelihood that he will engage in future criminal conduct.  *Id*. at 492-93.  Accordingly, evidence of a defendant's post-sentencing conduct bears directly on the District Court's need to "impose a sentence sufficient, but not greater than necessary," to serve the purposes of sentencing.  *Id*. at 492-93.

Likewise, the Third Circuit has noted that "appropriate sentences can only be imposed when sentencing courts 'consider the widest possible breadth of information about a defendant.'" *United States v. Salinas-Cortez*, 660 F.3d 695, 698 (3d Cir. 2011) (quoting *Pepper*, 562 U.S. at 488). Moreover, "a defendant's post-sentencing rehabilitation may illuminate [his] character and assist the sentencing court in assessing who the defendant is." *United States v. Bailey,* 459 F. App'x 118, 122 (3d Cir. 2012) (not precedential). "In assessing at least three of the Section 3553(a) factors, deterrence, protection of the public, and rehabilitation . . . there would seem to be no better evidence than [a] defendant's post-incarceration conduct." *United States v. McMannus*, 496 F.3d 846, 853 (8th Cir. 2007) (Melloy, J., concurring, joined by Smith, J.). Most significantly, the Court's consideration of a defendant's post-sentencing conduct reinforces the notion that "[a] court's duty is always to sentence the defendant as he stands before the Court on the day of sentencing," and not the person who may have stood before the Court at the time of the initial sentencing, nor the person he was at the time of the conduct. *Pepper*, 562 U.S. at 492; *United States v. Bryson*, 229 F.3d 425, 426 (2d Cir. 2000).

Mr. Fattah's post-sentencing conduct has been exemplary. Between February 2017 and the present, Mr. Fattah has taken over 23 courses while in prison. He has completed the entire module of classes for the Release Preparation Program ("RPP") and has taken on a variety of additional courses, including tutor training, not only to prepare himself for his eventual release from prison and re-integration into society, but also in an effort to help others. *See* Individual Reentry Plan – Program Review (Sentry Report).

Mr. Fattah has been a model inmate, not only in the way that he has conducted himself on a daily basis – never incurring a single infraction – but also in the way that he has served as a mentor to his fellow inmates. Mr. Fattah began working in the Education Department of FCI

McKean shortly after his arrival at the prison. Over the past two-and-a-half years, Mr. Fattah has tutored numerous inmates in reading skills in preparation for their GED examinations, and has also worked in the library where he assists inmates in locating books.

Mr. Fattah has channeled his life experience and desire to serve others into the numerous adult continuing education ("ACE") classes that he has taught or assisted in teaching. Specifically, Mr. Fattah has taught a 10-week course on public speaking, as well as three additional public speaking seminars. Mr. Fattah also has taught seminars on life choices and job pursuits, and assisted in teaching a variety of other classes to his fellow inmates. *See* Individual Reentry Plan – Program Review (Sentry Report). His desire to help others expands beyond the formal setting of a classroom.

Mr. Fattah's positive impact on his fellow inmates is also apparent from his everyday interactions, where he often serves as an informal mentor. This is most clearly gleaned from the support from inmates who have had the opportunity to interact with Mr. Fattah during his time at FCI McKean, including Kevin Boardman and Dorian Rawlinson. Attached to this memorandum are letters from Mr. Boardman and Mr. Rawlinson, in which they describe the impact that Mr. Fattah has had on their lives. Mr. Boardman explains that he has "interacted with hundreds of inmates during my incarceration," and notes that Mr. Fattah is unique and "has been an inspirational mentor to dozens of men with whom he has interacted while incarcerated." *See* Ex. A and B. Likewise, Mr. Rawlinson describes how Mr. Fattah's guidance "helped to structure the mindsets of many of the inmates at the camp." *See* Ex. C. Mr. Boardman and Mr. Rawlinson's experiences with Mr. Fattah are a snapshot of Mr. Fattah's exemplary conduct in prison and his interactions with his fellow inmates. Mr. Fattah's contributions to his fellow inmates and the prison as a whole merit consideration by this Court.

In addition, Mr. Fattah continues to aspire to assist others, in a private capacity, upon his eventual release from custody.  Mr. Fattah has long shown an interest in and contributed to the advancement of neuroscience.  Sentencing Memorandum (Dkt. 567) at 13-14.  That interest continues, and Mr. Fattah hopes someday to create an organization, Fattah Neuroscience Global Advisors ("FNGA"), that will be dedicated to supporting others who are focused on brain science and related research, through its specialized knowledge of neuroscience and its experience in implementing brain-related policy initiatives.  FNGA will allow Mr. Fattah to combine his passion and support for the sciences, with his dedication to improving the conditions of the global community.

Finally, as confirmed by the Presentence Report, Mr. Fattah has been making restitution in accordance with the Court's order.  To date, Mr. Fattah has paid $73,393.98 in restitution.  PSR ¶ 284, FN 23.

**IV.	The Principle of Avoiding Unwarranted Sentencing Disparities Among Defendants With Similar Records Supports Imposition of a Sentence That is Shorter Than Mr. Fattah's Original 120-Month Sentence.**

Section 3553(a) directs the Court to consider, among other factors, "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct[.]" *See* 18 U.S.C. § 3553(a).[2]

---

[2] The other factors are the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; the guidelines and pertinent policy statements issued by the Sentencing Commission; and the need to provide restitution to any victims of the offense.  *See* 18 U.S.C. § 3553(a).

A review of sentences imposed on defendants convicted of similar crimes and with similar backgrounds to Mr. Fattah justifies the imposition of a sentence of less than 120 months imprisonment in this case. In addition to the cases cited in Mr. Fattah's original memorandum, we note the following more recent cases:

<u>John Waltman (sentenced June 10, 2019 to **78 months**)</u>

Waltman, a former constable, elected magisterial district justice, and local Republican committee chairman, pled guilty to conspiracy to commit money laundering and five counts of extortion. His "staggering list of misdeeds . . . ranged from fixing a traffic ticket to conspiring to launder $400,000 in what he believed to be proceeds from the illegal sale of drugs." Jeremy Roebuck, *'I've completely betrayed your trust': Extortion, kickbacks, and a money-laundering scheme get former district judge 6 1/2 years in prison*, PHILA. INQ., June 11, 2019, at A1. Waltman was the ringleader of at least five bribery, extortion, and money laundering schemes involving other public officials and local businesspeople. *Id.*

<u>Vaughn Spencer (sentenced April 24, 2019 to **96 months**)</u>

Spencer, a former Reading Mayor and public school teacher, was convicted on nine counts of bribery in a series of schemes that, according to prosecutors, "'took bribery to a new low.'" Peter Hall, *Ex-Reading Mayor Gets 8 Years*, MORNING CALL, Apr. 25, 2019, at A1. Spencer was convicted of being the leader of schemes to both accept and pay bribes for favorable legislation. *See* Peter Hall, *Ex-Mayor Found Guilty on All Counts*, MORNING CALL, Aug. 31, 2018, at A1.

<u>Dean Skelos (sentenced October 24, 2018 to **51 months**)</u>

Skelos was the former leader of the New York state senate. He was originally convicted on bribery, extortion, and conspiracy charges in 2015 but his conviction was overturned on the

basis of the Supreme Court's *McDonnell* decision. While his original sentence was five years, after retrial and conviction on all charges, he was sentenced to 51 months. *See* Benjamin Weiser and Vivian Wang, *Skelos and Son Are Sentenced to Prison in Corruption Retrial*, N.Y. TIMES, Oct. 25, 2018, at A24.

### Sheldon Silver (sentenced July 27, 2018 to **84 months**)

Silver, the former speaker of the New York state assembly, was originally sentenced to a 12-year term following his 2015 conviction for a series of bribery schemes. After his conviction was vacated (as a result of the *McDonnell* decision), he was retried and again convicted on all charges, upon which he was sentenced to an 84-month term for bribes that netted him nearly $4 million. *See* Benjamin Weiser, *Seven-Year Prison Sentence for Former Assembly Speaker Caps Ignoble Fall From Power*, N.Y. TIMES, July 28, 2018, at A15.

### Corrine Brown (sentenced December 4, 2017 to **60 months**)

Brown, a former congresswoman, was convicted of 18 counts of conspiracy, aiding and abetting mail and wire fraud, concealing material facts on her congressional financial disclosure forms, and various tax related charges. *See United States v. Brown*, No. 3:16-cr-93-J-32JRK, 2017 U.S. Dist. LEXIS 198616, at *4 (M.D. Fla. Dec. 4, 2017). The heart of the scheme for which Brown was convicted involved the fraudulent solicitation and theft of funds from an educational charity. *Id.* More than $660,000 of fraud losses was attributable to Brown's conduct. *Id.* at *18.

## V.   Conclusion

The significant reduction in the Guidelines range, Mr. Fattah's post-sentencing conduct, and the sentences of similarly situated defendants establish that the Section 3553(a) factors, individually and in combination, favor a below-Guidelines sentence under the 120-month

sentence the Court initially imposed on Mr. Fattah.  The propriety of the recommended sentence is buttressed by the fact that Mr. Fattah has no prior criminal history, and has devoted his entire adult life to helping the citizens of Philadelphia and Pennsylvania.   This prosecution stands as an anomaly in an otherwise law-abiding life and career in public service.  Mr. Fattah respectfully requests that the Court grant a below-Guidelines sentence that recognizes these factors and varies below the Guidelines range in a manner that is commensurate with the Court's original sentence.

           Respectfully submitted,

           */s Samuel W. Silver*
           Samuel W. Silver
           Bruce P. Merenstein
           SCHNADER HARRISON SEGAL & LEWIS LLP
           1600 Market Street, Suite 3600
           Philadelphia, PA 19103
           ssilver@schnader.com
           bmerenstein@schnader.com
           215-751-2309
           215-751-2205 (facsimile)

           *Attorneys for Chaka Fattah, Sr.*

July 9, 2019